O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CELLULAR ACCESSORIES FOR          )   Case No. CV 12-06736 DDP (SHx)
LESS, INC., a California          )
corporation,                     )   **ORDER DENYING PLAINTIFF'S MOTION**
                                  )   **FOR SUMMARY JUDGMENT AND GRANTING**
              Plaintiff,          )   **IN PART DEFENDANT'S MOTION FOR**
                                  )   **SUMMARY JUDGMENT**
     v.                           )
                                  )   [Dkts. 52, 53]
TRINITAS LLC, a Texas            )
limited liability company;        )
DAVID OAKS, an individual,        )
                                  )
              Defendants.         )
_____    )

     Presently before the court are a motion for summary judgment
by Plaintiff Cellular Accessories for Less, Inc. ("Cellular") and a
motion for summary judgment by Defendants Trinitas LLC ("Trinitas")
and David Oakes (collectively, "Defendants").  These motions
address one claim in common, a breach of contract claim, but
otherwise address distinct issues.

**I. BACKGROUND**

     Cellular and Trinitas are both sellers of mobile phone
accessories to businesses.  David Oakes worked for Cellular as a
"Sales Account Manager" from June 2, 2004 to December 27, 2010,

1  when he was terminated.  (Ex. A, Decl. David Oakes; Mot. Decl.

2  Mitchell Langstein.)  Oakes signed an "Employment Agreement" at the

3  start of his employment in 2004.  (Ex. A, Oakes Decl.)  The

4  Employment Agreement contained a clause reading: "CAFL [i.e.,

5  Cellular] requests that proprietary information remains the

6  property of this organization and may not leave, either physically

7  or electronically unless approved in writing by Mitch[ell

8  Langstein]."  Id.  That clause also included Cellular's "customer

9  base" within the sweep of "proprietary information."  Id.

10     Oakes also signed a "Statement of Confidentiality" on January

11  7, 2008, which stated that he would not "knowingly disclose, use,

12  or induce or assist in the use or disclosure of any Proprietary

13  Information . . . or anything related to Proprietary Information .

14  . . without the Company's prior express written consent."  (Ex. D,

15  Oakes Decl.)  "Proprietary Information" was defined in the

16  Statement as:

17        information (a) that is not known by actual or potential

18        competitors of the company or is generally unavailable to the

19        public, (b) that has been created, discovered, developed, or

20        which has otherwise become known to the Company . . . and (c)

21        that has material economic value or potential material

22        economic value to the Company's present or future business.

23  Id.  The parties agree that Oakes signed the Statement; however,

24  they disagree as to whether a valid contract was formed thereby.

25  (Def.'s Mot. Summ. J., § III.B.3.a.)

26     In late 2010, shortly before being terminated, Oakes emailed

27  himself a digital file created with the ACT computer program ("ACT

28  file") containing the contact information for some 900+ business

2

1   and personal contacts.  (Ex. B, Oakes Decl.)  He also maintained

2   his LinkedIn contact information after his termination.  (Ex. C,

3   Oakes Decl.)  Finally, Plaintiff alleges that he also emailed

4   himself the direct contact information for the purchasing agents of

5   certain clients, information on clients' billing preferences and

6   procedures, clients' past pricing requests, and at least one

7   internal strategy document regarding a client, Honeywell.  (Exs. B-

8   J, L, Decl. Obi Iloputaife.)

9        Plaintiff also alleges that Oakes emailed or otherwise

10  contacted clients after his termination and accused Cellular of

11  "major unethical and deceitful acts done deliberately by management

12  towards its clients."  (Ex. N, Iloputaife Decl; Ex. A, Decl.

13  Melanie Cogburn, at transcript pages 182-183.)

14       After leaving Cellular, Oakes started his own company in Texas

15  which eventually became the company known as Trinitas.  Trinitas

16  directly competes with Cellular for business in the corporate

17  mobile phone accessory market.

18       Plaintiff brings an action for damages and injunctive relief

19  on claims of "copyright infringement . . . breach of contract,

20  unfair competition, common law unfair competition, trade secret

21  misappropriation, unjust enrichment, intentional interference with

22  prospective business advantage, and trade libel."  (Compl. ¶ 4.)

23       In these motions for summary judgment, Plaintiff seeks summary

24  judgment on the issues of breach of contract and unfair competition

25  resulting from that breach.  Defendant seeks summary judgment on

26  all issues except copyright infringement, arguing that (1) there is

27  no triable issue of fact on the trade secret claim under the

28  California Uniform Trade Secrets Act ("CUTSA"); (2) Plaintiff's

common-law torts are preempted by CUTSA; (3) there was no breach of contract because there was no contract, no breach, and/or no actual damages; and (4) that there is no triable issue of fact with regard to trade libel.

**II. LEGAL STANDARD**

A party may move for summary judgment with regard to any claim or defense or any part of any claim or defense.  Fed.R.Civ.P. 56(a).  The court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  <u>Id.</u>  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The moving party bears the burden of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" regarding a particular claim or defense.  <u>Id.</u> (internal quotation marks omitted).

**III. DISCUSSION**

*A. CUTSA Trade Secret Misappropriation*

California has adopted a statutory trade secrets scheme, the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civil Code § 3426 et seq.  Under CUTSA, "[a]ctual or threatened misappropriation" of trade secrets may be enjoined, Cal. Civ. Code § 3426.2, and a plaintiff may also sue for damages equal to "the actual loss caused by misappropriation" as well as any "unjust enrichment caused by misappropriation that is not taken into

4

account in computing damages for actual loss."  Cal. Civ. Code §
3426.3.  Trade secrets are defined as any

> information, including a . . . compilation . . . that:
> (1) Derives independent economic value, actual or potential,
> from not being generally known to the public or to other
> persons who can obtain economic value from its disclosure or
> use; and
> (2) Is the subject of efforts that are reasonable under the
> circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1.  Misappropriation is defined as, inter
alia,

> [d]isclosure or use of a trade secret of another without
> express or implied consent by a person who . . . [a]t the time
> of disclosure or use, knew or had reason to know that his or
> her knowledge of the trade secret was . . . [a]cquired under
> circumstances giving rise to a duty to maintain its secrecy or
> limit its use . . . .

Id.

Three different types of information might be subject to trade
secret law in this case.  First, the parties do not dispute that
Oakes emailed himself the ACT file, as well as numerous additional
items described above.  Second, the parties also do not dispute
that Oakes retained contacts in his LinkedIn social networking
account that he created while employed at Cellular.  Third,
Cellular alleges, and provides exhibits to show, that Oakes emailed
himself a number of other files and documents relating to
customers, including the direct contact information for those with
the power to do business, information about purchasing and billing

5

1   preferences or requirements, and specific strategy information

2   relating to one client, Honeywell.  Defendants do not directly deny

3   that Oakes took all the documents alleged in this third category of

4   information, but neither do they precisely admit it.  Defendants'

5   Reply does admit that Oakes took certain documents relating to

6   Honeywell and its "purchasing requirements."  (Def.'s Reply, § I.)

7        The removal of the ACT file, containing customer information,

8   is the primary point of contention.  "It is well-established that a

9   customer list may constitute a protectable trade secret." Gable

10  Leigh, Inc. v. North Am. Miss, No. CV 01-01019 MMM(SHX); 2001 WL

11  521695 at *15 (C.D. Cal. Apr. 13, 2001) (citing cases).  However,

12  such lists are not *automatically* trade secrets, because many

13  customer lists contain no information which is not "easily

14  discoverable through public sources." Scott v. Snelling &

15  Snelling, Inc., 732 F. Supp. 1034, 1044 (N.D. Cal. 1990).  But

16  where "the employer has expended time and effort identifying

17  customers with particular needs or characteristics," the list can

18  be a protectable trade secret. Mor-Life, Inc. v. Perry, 56 Cal.

19  App. 4th 1514, 1521 (1997).  Thus, the chief factual issue in

20  determining whether a customer list is a trade secret is the amount

21  of effort involved in compiling it.  If the methods used to compile

22  the information are "sophisticated," "difficult," or "particularly

23  time consuming," that tends to show that it is a trade secret.  Am.

24  Paper & Packaging Products, Inc. v. Kirgan, 183 Cal. App. 3d 1318,

25  1326 (1986).  The underlying rationale for requiring that customer

26  lists be the product of some significant effort is that information

27  which is easily and publicly available does not convey enough

28

1    "independent economic value" to its holder to satisfy the first

2    prong of the § 3426.1 definition.  <u>Scott</u>, 732 F. Supp. at 1044.

3        Defendants argue that Plaintiff has failed to carry its burden

4    of showing that the ACT file is the product of significant effort.

5    Defendant contends that all the information in the ACT file is

6    easily obtained through public sources.  "Anyone can easily get

7    extensive information about Fortune 1000 companies, through a

8    standard internet search."  (Def.'s Mot. Summ. J., § B.1.)

9        However, whether the information in Oakes' ACT file could be

10   so easily obtained is in dispute.  Cellular CEO Mitchell Langstein

11   declares that "[t]o build a list of cellular accessories

12   procurement officers requires the expenditure of a significant

13   amount of time and money," that "Cellular hires and pays employees

14   who are tasked with cold-calling companies and working their way

15   past the 'gatekeepers' to reach the right procurement officer,"

16   that David Oakes was similarly required, during his employment with

17   Cellular, to make such calls, that Oakes and other employees were

18   encouraged to "network" with employees at prospect companies, that

19   Oakes made such networking contacts in the course of his

20   employment, and that, in short, "information found in [the]

21   customer list is not available in public directories."  (Reply

22   Decl. Mitchell Langstein, ¶¶ 32-35, 39, 40-41, 49-52.  <u>See also</u> Ex.

23   M, Opp'n Decl. Rasheed McWilliams (deposition of Mitchell Langstein

24   describing method by which sales agents attempt to identify

25   "decision makers" at target companies).)

26       Indeed, Oakes' own declaration supports this narrative: "I was

27   directed to generate business . . . .  I was given no leads or

28   customer lists, but was told to begin making cold calls to generate

                                    7

1  new business for the company . . . .  Getting business usually

2  depended on a number of factors, including the relationships I was

3  able to form with the individuals . . . .  As I began to make

4  calls, I would put their information into my ACT file." (Oakes

5  Decl., ¶¶ 2-3.)

6       On the other hand, Oakes also says that "All individuals I

7  talked to-at any company-had already been contacted by other

8  competitors," (Oakes Decl., ¶ 2), and that LinkedIn suggested

9  contacts to him automatically-facts which, if true, tend to show

10 that his information-gathering techniques were not especially

11 "sophisticated" or "difficult."  Kirqan, 183 Cal. App. 3d at 1326.

12      In short, there is a genuine issue of fact as to how difficult

13 the information in the ACT file was to obtain.

14      Defendants also argue that David Oakes' LinkedIn contacts were

15 not a trade secret, because Cellular encouraged its employees to

16 create and use LinkedIn accounts, (Oakes Decl. ¶ 2), and Oakes'

17 LinkedIn contacts would have been "viewable to any other contact he

18 has on LinkedIn." (Def.'s Mot. Summ. J., § II.)  Plaintiff argues,

19 on the other hand, that LinkedIn information is only available to

20 the degree that the user chooses to share it. (Reply Decl.

21 Mitchell Langstein, ¶ 44; Pl.'s Opp'n, § III.B.5.)  Therefore,

22 according to Plaintiff's declarant, it is not automatically the

23 case that contact information is "viewable to any other contact."

24 Oakes' declaration does not say whether this characterization of

25 the functionality of LinkedIn is accurate, or if it is, whether he

26 had set his contacts to be viewable.  Because the Court declines to

27 take judicial notice of the functions of LinkedIn, and because the

28 parties' declarants do not make sufficiently clear whether and to

1  what degree Oakes' LinkedIn contacts were indeed made public (and
2  whether this was done with Cellular's explicit or implicit
3  permission), there remain issues of material fact as to the
4  LinkedIn information.

5      As to the third type of information–the emails containing
6  contact information, emails indicating customer preferences, and
7  internal memo–Defendant does not address the matter separately, but
8  asserts that Oakes retained the Honeywell documents "for
9  posterity," and that information about clients' purchasing
10 requirements or preferences cannot be a trade secret because the
11 cellular accessories business is a "commodity business that shifts
12 and changes all the time."  (Def.'s Reply, § I.)  But it seems
13 clear that if a customer list (gathered with a sufficient amount of
14 effort) can provide independent economic value to a business,
15 documentation of the past behavior and preferences of those
16 customers can be, too–even if market conditions change.  As to the
17 Honeywell memo, it appears to describe a successful method for
18 meeting a customer's needs, which could likewise provide
19 independent economic value.  "Cellular uses its customer
20 information, in conjunction with additional trade secret
21 information, such as customer product, pricing and payment
22 preferences, to win business from [and] maintain relationships with
23 clients."  (Reply Decl. Mitchell Langstein, ¶ 17.)  Thus, there is
24 a genuine issue of material fact with regard to the economic value
25 of this information, too.

26     Finally, Defendants argue (presumably with regard to all three
27 kinds of information) that Cellular fails to meet its burden as to
28 the second § 3426.1 definition of trade secret: showing that it

took reasonable steps to protect the information.  But this, too, is a disputed issue of fact.  Cellular claims that it "goes to great lengths to keep its proprietary information confidential and protected, using layers of passwords and SSL encryption," and describes in some detail which items are encrypted or password-protected.  (Reply Decl. Mitchell Langstein, ¶ 23-24.)  Oakes disputes this, admitting that his email was password-protected but asserting that employee computers were generally left on and unprotected.  (Oakes Decl., ¶ 7.)

With regard to both prongs, then, Defendants ask the Court to make credibility determinations between competing statements by motivated parties on both sides, each putting forth some factual allegations which are not facially incredible.  That, however, is not the Court's role at summary judgment,[1] which may be granted only where "there is no genuine dispute as to any material fact" Fed.R.Civ.P. 56(a).

Defendant's motion for summary judgment as to trade secret misappropriation is denied.

*B. Preemption*

CUTSA "has, for the most part, superseded prior California common law on trade secret issues." Scott, 732 F. Supp. at 1044. Thus, CUTSA preempts other claims "based on the same nucleus of facts as trade secret misappropriation." K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939, 962 (2009).

---

[1]"That an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact."  United States v. Shumway, 199 F.3d 1093, 1104 (9th Cir. 1999).

10

1    Defendant contends that several of Plaintiff's tort
2  claims–statutory and common law unfair competition, unjust
3  enrichment, and interference with prospective business
4  advantage–are based on the same nucleus of facts as its trade
5  secret claim, and are therefore preempted.  (Def.'s Mot. Summ. J.,
6  § III.B.2.)  Plaintiff responds that Defendant has mischaracterized
7  the factual foundations of its tort claims, insisting that "they
8  arise from David Oakes' defamatory and libelous acts following his
9  termination."  (Pl.'s Mot. Summ. J., § II.C.)

10    Plaintiff's Third Cause of Action (statutory unfair
11  competition) and Fourth Cause of Action (common law unfair
12  competition) appear to be based primarily on the allegation of
13  copyright infringement.  (Compl. ¶¶ 50-60.)  To the extent that
14  these claims may also rely on trade secret misappropriation, see
15  id. at ¶ 58, they are preempted.

16    Plaintiff's Sixth Cause of Action (unjust enrichment) is also
17  preempted, to the extent that it is a *common law* claim based on the
18  same nucleus of facts as the trade secret claim.  However, a
19  plaintiff may also recover for unjust enrichment by trade secret
20  misappropriation *under CUTSA itself*.  Cal. Civil Code § 3426.3.
21  Such statutory recovery would obviously not be preempted.

22    Finally, Plaintiff's Seventh Cause of Action (interference
23  with prospective business advantage) is based in part on the trade
24  secret claim.  (Compl. ¶ 79.)  To that extent, it is preempted.
25  However, to the extent that it is based on the trade libel claim,
26  id. at ¶ 80, it is not preempted.

27    Thus, each of these tort claims is preempted, and summary
28  judgment is granted, to the extent that it relies on the nucleus of

1  facts of the trade secrets claim.  However, because each is also

2  based on some alternative set of facts as well, each claim survives

3  preemption in part.

4  *C. Trade Libel*

5      In California, trade libel must be proved by showing, "at a

6  minimum: (1) a publication [of a disparaging statement]; (2) which

7  induces others not to deal with plaintiff; and (3) special

8  damages."  <u>Nichols v. Great Am. Ins. Companies</u>, 169 Cal. App. 3d

9  766, 773 (1985) (parentheses omitted).

10     Cellular alleges that Defendants "published one or more false

11 statements which were intended to disparage CELLULAR ACCESSORIES's

12 good and services."  However, at the time motions for summary

13 judgment were filed, the only evidence Cellular had produced of

14 such statements were a declaration and deposition of its CEO

15 Mitchell Langstein alleging he had heard from some customers that

16 David Oakes had made certain potentially disparaging remarks to his

17 customers via email.  (<u>E.g.</u>, Opp'n Decl. Mitchell Langstein, ¶¶ 79-

18 86.)

19     This evidence suffers two defects.  First, Langstein's

20 allegation as to the contents of an email is not the best evidence

21 of the contents of that email.  "An original writing, recording, or

22 photograph is required in order to prove its content . . . ."  Fed.

23 R. Evid. 1002; <u>United States v. Bennett</u>, 363 F.3d 947, 954 (9th

24 Cir. 2004) (holding that "a printout or other representation" of

25 electronically stored data is the best evidence of that data).

26 Second, even if the contents of the email could be acceptably

27 reconstructed through testimony or declarations, Langstein nowhere

28 directly alleges that he personally saw the emails.  At best, he

1  alleges that some of his customers alerted him to the contents of
2  the emails.  (<u>E.g.</u>, Ex. A, Decl. Melanie Cogburn, at transcript
3  pages 79-83.)  As there is no direct evidence from those customers
4  (nor does there appear to be any forthcoming at trial), Langstein's
5  statements, based on inadmissible hearsay, are not enough to prove
6  the contents of the email.  Fed. R. Evid. 801-802.

7      Cellular attempts to cure these defects by attaching to its
8  reply an email purported to be from another of Cellular's
9  customers, Gary Merritt.  (Ex. N, Iloputaife Decl.)  This email
10 might meet the best evidence rule—although it is a third party's
11 email quoting the Oakes email, not the Oakes email itself, which
12 could raise hearsay issues.

13     In any event, Cellular has, without explanation, introduced
14 this evidence only at the reply stage, thus denying Defendants the
15 opportunity to respond to it. Given that the email, if authentic,
16 would already have been in Cellular's possession at the time the
17 company initiated this proceeding, the Court sees no reason for
18 such a long delay in presenting this evidence.  The Court has the
19 discretion to ignore evidence introduced for the first time in a
20 reply brief, <u>In re McAllister</u>, No. BAP CC-13-1578, 2014 WL 3955008
21 (B.A.P. 9th Cir. Aug. 13, 2014) ("[C]onsideration of new arguments
22 or evidence in a reply falls within the discretion of the trial
23 court."), and because considering the email at this stage would
24 prejudice the Defendants for no good reason, the Court chooses not
25 to do so.

26     Thus, Defendants have successfully pointed to an absence of
27 any admissible evidence to show publication of a disparaging
28 statement that induced others not to deal with Plaintiff, an

1   essential element of the trade libel claim.  Summary judgment is

2   granted to the Defendants on this claim.

3        Because Cellular's interference with prospective business

4   advantage survives only to the extent that it relies on the facts

5   of the trade libel claim, § III.B. supra, and because those facts

6   are not proven, Defendants are granted summary judgment on that

7   claim as well.

8   *D. Breach of Contract and Related Claims*

9        Plaintiff and Defendants both move for summary judgment on the

10  issue of breach of contract.[2]  Cellular argues that it is

11  undisputed that David Oakes signed both the Employment Agreement

12  and the Statement of Confidentiality; that those documents mandated

13  that Oakes not disclose or remove proprietary information; and that

14  it is also undisputed that Oakes took the ACT file and certain

15  other information as well.  Thus, Cellular contends, as a matter of

16  law it is entitled to judgment as to breach of contract.

17       Defendant Oakes counters that there was no valid contract as

18  to the Statement of Confidentiality, because there was no new

19  consideration; that even if there was a contract, there was no

20  breach, because the information in question was not confidential or

21  proprietary; and that there is no allegation of actual damages.

22       The Court finds that both the Employment Agreement and the

23  Statement of Confidentiality could be found by a rational trier-of-

24  fact to be valid agreements.  As a starting point, the Employment

25  Agreement does not appear to contain any provision specifying its

26  length or end date, and so it is presumed to be an at-will

27

28       [2]This claim is solely against Defendant Oakes.

14

1   agreement.  Cal. Labor Code § 2922.  Absent some sort of

2   integration or anti-modification clause, an at-will employment

3   agreement can generally be modified by an employer at any time; the

4   modification essentially terminates the prior agreement and creates

5   a new, unilateral contract, which the employee accepts by

6   continuing to work for the employer under the modified terms.  <u>See</u>

7   <u>DiGiacinto v. Ameriko-Omserv Corp.</u>, 59 Cal. App. 4th 629, 633

8   (1997) (holding that a modification to an at-will employment

9   contract reducing the employee's salary did not breach, but rather

10  terminated and replaced, the employment contract).  The opportunity

11  for continued employment is, itself, consideration for the new

12  agreement.  <u>Id.</u>

13      The Statement of Confidentiality being a modification of the

14  Employment Agreement that created a new, valid contract, the

15  question is whether Defendants violated that contract.  The

16  Statement of Confidentiality forbade employees to disclose or use

17  proprietary information, which it defined on substantially the same

18  terms as the CUTSA trade secret definition: namely, information

19  that is not known to competitors or the public, obtained by the

20  company, that confers an economic benefit.  (Ex. D, Oakes Decl.)

21  Because of this, resolution of the breach of contract claim would

22  require resolution of essentially the same disputed facts discussed

23  above in § III.A.[3]  Thus, it cannot be said as a matter of law that

24  Defendant Oakes did not breach the contract.

25      However, Defendants are correct that a breach of contract

26  claim requires a showing of damages; those damages are in "the

27

28      [3]Note that this does *not* render the contract claim preempted
    by CUTSA.  Cal. Civ. Code § 3426.7(b).

15

amount which will compensate the party aggrieved for all the
detriment proximately caused [by the breach], or which, in the
ordinary course of things, would be likely to result therefrom."
Cal. Civ. Code § 3300.  The causal element is critical.  Damages
must be "clearly ascertainable in both their nature and origin."
Cal. Civ. Code § 3301.  "Causation of damages in contract cases, as
in tort cases, requires that the damages be proximately caused by
the defendant's breach, and that their causal occurrence be at
least reasonably certain."  Vu v. California Commerce Club, Inc.,
58 Cal. App. 4th 229, 233 (1997).

Thus, in order to defeat Defendants' motion for summary
judgment, Cellular is required to put forth evidence from which a
rational trier-of-fact could conclude that Oakes' breach of the
proprietary information provisions in his contract in fact caused
Cellular a loss of business.  Here, Cellular has not carried that
burden.

Cellular asserts that "[o]ver the course of three years,
Cellular lost and Defendant gained a proportional increase in
sales" to those customers.  (Pl.'s Opp'n, § III.B.2.)  Such a
trend, if it could be shown, might well be enough to show damages
circumstantially.  But Cellular does not show a trend of
proportional loss and gain by the parties.  Its evidence *does*
satisfactorily show that in the three years after Oakes was
terminated from his employment with Cellular, Trinitas' sales
volume increased–including sales to some past or current customers
of Cellular.  (Ex. N, Opp'n Decl. Rasheed McWilliams.)  But its
exhibits show nothing at all about Cellular's sales; so far as the
Court can determine, Plaintiff's sole piece of evidence regarding

16

1   its own sales figures is Mitchell Langstein's statement that "[i]n

2   2012, there was a large reduction in the volume of Cellular's sales

3   to Atmos Energy." (Opp'n Decl. Mitchell Langstein, ¶ 87.)  But

4   that fact, alone, is not sufficient to allow direct comparison

5   between Cellular's and Trinitas' sales.  How large is "large"?  Was

6   the reduction in fact "proportional" to Trinitas' gain?  Did

7   Cellular lose sales in the other years?  None of these questions

8   can be answered on Plaintiff's evidence.

9       Plaintiff's proof of causation with regard to damages–and,

10  indeed, the existence of any actual loss at all–is not sufficient

11  to allow a rational trier-of-fact to find for Plaintiff on a breach

12  of contract claim.  Defendant's motion is granted on this claim.

13  Any related claims, including unfair competition based specifically

14  on breach of contract, therefore also fail.

15  **IV. CONCLUSION**

16      Defendants' motion for summary judgment is denied as to the

17  CUTSA trade secret claim.  It is granted as to the trade libel and

18  interference with prospective business advantage claims.  It is

19  granted in part as to the statutory and common law unfair

20  competition claims, inasmuch as they are based on trade secret

21  misappropriation, but denied inasmuch as they may be based on the

22  facts of other claims.  The motion is granted in part as to the

23  unjust enrichment claim, inasmuch as it is based on common law

24  principles rather than recovery under CUTSA.  Finally, Defendant's

25  motion for summary judgment is granted, and Plaintiff's motion

26  ///

27  ///

28

1  denied, as to the breach of contract claim and any unfair

2  competition claims dependent on that claim.

3

4  IT IS SO ORDERED.

5

6

7  Dated: September 16, 2014

8                                    DEAN D. PREGERSON
                                     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28