1

2

3

O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   CELLULAR ACCESSORIES FOR        )   Case No. CV 12-06736 DDP (SHx)
     LESS, INC., a California        )
12   corporation,                    )
                                     )   **ORDER DENYING IN PART AND**
13                  Plaintiff,       )   **GRANTING IN PART DEFENDANTS'**
                                     )   **MOTION FOR SUMMARY JUDGMENT**
14        v.                         )
                                     )
15   TRINITAS LLC, a Texas           )
     limited liability company;      )
16   DAVID OAKS, an individual,      )   [Dkt. No. 90, 96]
                                     )
17                  Defendants.      )
     _____ )
18

19        Presently before the court is Defendants Trinitas LLC and

20   David Oakes's Motion for Summary Judgment.  Having considered the

21   submissions of the parties, the court denies the motion in part and

22   grants it in part and adopts the following order.

23   **I.   Background**

24        Plaintiff Cellular Accessories for Less, Inc. ("CAFL") and

25   Defendant Trinitas LLC ("Trinitas") both sell mobile phone

26   accessories on the internet.  Defendant David Oakes is Plaintiff's

27   former employee and the founder of Trinitas.  (Complaint ¶¶ 12&16,

28   Dkt. No. 1.)

1    Plaintiff owns and operates a website that contains extensive
2    descriptions for approximately 10,000 products. (Id. ¶ 9;Dec. of
3    R. Morrison ¶ 2.)  Plaintiff provides product descriptions that go
4    beyond the product specifications provided by manufacturers. (Dec.
5    of R. Morrison ¶ 3.)  Plaintiff alleges these extended product
6    descriptions give it a competitive advantage because they provide
7    accurate, detailed content and therefore allow its customers to
8    make informed purchasing decisions. (Id.)
9        To produce these product descriptions, Plaintiff employs
10   individuals to add extra text to the basic product specifications
11   and facts provided by the manufacturers. (Dec. of R. Morrison ¶
12   7.)  Specifically, Plaintiff alleges that website manager Ryan
13   Morrison authored the text under the "Bluetooth Headset Benefits"
14   heading found on the product description page for the M155 Marque
15   Voice Controlled Bluetooth Wireless Headset ("M155"). (Dec. of R.
16   Morrison ¶ 10.)  The same text under the Bluetooth Headset Benefits
17   heading was duplicated on Defendants' website. (Id. ¶ 20.)  The
18   same text was also found on another cellular accessory company's
19   website. (Dec. of M. Cogburn Ex. A at p.114:5-25, 115:1-12.)
20       Plaintiff identifies 971 product descriptions it alleges
21   Defendants copied. (Complaint Ex. B, Dkt. No. 1.)  In addition to
22   these product descriptions, Plaintiff asserts that Defendants also
23   duplicated the Frequently Asked Questions ("FAQ") section. (Dec.
24   of R. Morrison ¶ 21.)
25       On May 18, 2012 and July 17, 2012, Plaintiff's counsel sent
26   Digital Millennium Copyright Act ("DMCA") notification
27   correspondences to the web host for Defendants' website listing 49
28   product descriptions that Plaintiff identified as its copyrighted

1  works.  (Dec. of M. Cogburn Ex. A, Exs. 4-5 of Langstein

2  Deposition.)  These notices demanded that the web host for

3  Defendants' website immediately take down the web content that

4  infringed upon Plaintiff's copyright.  (Id.)  Plaintiff's

5  President, Mitchell Langstein, reviewed and authorized these DMCA

6  notices.  (Dec. of M. Cogburn Ex. A at p. 104:20-22, 106:11-23.)

7      After Defendants received these DMCA notices, they began to

8  change the product descriptions mentioned in the notices to keep

9  its website alive.  (Dec. of M. Cogburn ¶ 4.)  At that time,

10  Defendants also removed and changed the FAQ and Corporate Account

11  section.  (Id.)  On August 6, 2012, Plaintiff was issued Copyright

12  Registration No. TX 7549240, which covers the CAFL website and its

13  content, including the product descriptions.  (Dec. of M. Cogburn ¶

14  3, Ex. B; Dec. of R. McWilliams ¶ 2, Ex. A.)  That same day,

15  Plaintiff filed this action seeking injunctive relief against

16  Defendants for copyright infringement.  (Complaint ¶ 1, Dkt. No.

17  1.)  Plaintiff also raised other causes of action that are not at

18  issue here.  (Id.)

19      In this motion for summary judgment, Defendants seek summary

20  judgment on the copyright infringement claim, arguing that

21  Plaintiff does not own a valid copyright and that Plaintiff does

22  not possess any protectable interest in what has allegedly been

23  infringed.

24  **II.  Legal Standard**

25      Summary judgment is appropriate where the pleadings,

26  depositions, answers to interrogatories, and admissions on file,

27  together with the affidavits, if any, show "that there is no

28  genuine dispute as to any material fact and the movant is entitled

3

1  to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party

2  seeking summary judgment bears the initial burden of informing the

3  court of the basis for its motion and of identifying those portions

4  of the pleadings and discovery responses that demonstrate the

5  absence of a genuine issue of material fact.  See Celotex Corp. v.

6  Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets its

7  burden, the burden shifts to the nonmoving party opposing the

8  motion, who must "set forth specific facts showing that there is a

9  genuine issue for trial." Anderson, 477 U.S. at 256.

10     "Although summary judgment is not highly favored on questions

11  of substantial similarity in copyright cases, summary judgment is

12  appropriate if the court can conclude, after viewing the evidence

13  and drawing inferences in a manner most favorable to the non-moving

14  party, that no reasonable juror could find substantial similarity

15  of ideas and expression." Narell v. Freeman, 872 F.2d 907, 909-10

16  (9th Cir. 1989).  "Where reasonable minds could differ on the issue

17  of substantial similarity, however, summary judgment is improper."

18  Shaw v. Lindheim, 919 F.2d 1353, 1355 (9th Cir. 1990).

19  **III. Discussion**

20     "To establish [copyright] infringement, two elements must be

21  proven: (1) ownership of a valid copyright, and (2) copying of

22  constituent elements of the work that are original." Feist

23  Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361

24  (1991).

25  **A.   Ownership of a valid copyright**

26     "[A] certificate of copyright registration constitutes prima

27  facie evidence of copyrightability and shifts the burden to the

28  defendant to demonstrate why the copyright is not valid." Bibbero

1   Sys., Inc. v. Colwell Sys., Inc., 893 F.2d 1104, 1106 (9th Cir.

2   1990).  Defendant may rebut the presumption of copyrightability by

3   showing that the plaintiff's work is not original.  N. Coast Indus.

4   v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992).  To be

5   original, "[a]ll that is needed to satisfy both the Constitution

6   and the statute is that the 'author' contributed something more

7   than a 'merely trivial variation, recognizably 'his own.'"  Sid &

8   Marty Krofft Television v. McDonald's Corp., 562 F.2d 1157, 1163

9   n.5 (9th Cir. 1977), *superseded on other grounds by* 17 U.S.C. §

10  504(b)(quoting Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99,

11  102-03 (2d Cir. 1951).  "[T]he requisite level of creativity is

12  extremely low; even a slight amount will suffice."  Feist, 499 U.S.

13  at 345.

14      Plaintiff holds a certificate of copyright registration for

15  the contents of the CAFL website, including the product

16  descriptions and the FAQ section.  (Dec. of M. Cogburn ¶ 3, Ex. B;

17  Dec. of R. McWilliams ¶ 2, Ex. A.)  Thus, Plaintiff has provided

18  prima facie evidence of owning a valid copyright.  However,

19  Defendants dispute the validity of Plaintiff's copyright.

20  Specifically, Defendants argue that Plaintiff did not author the

21  product descriptions on the CAFL website, but that these

22  descriptions came from the manufacturer.  To the degree that

23  Plaintiff edited, rearranged or modified the product descriptions,

24  Defendants argue that the edits are not sufficiently original to

25  warrant copyright protection.  (Mot. Summ. J. at 7:14-18.)

26      Such general allegations are not sufficient to shift the

27  burden to Plaintiff to prove that its work is original.  Defendant

28  argues that "Plaintiff must present and outline the exact elements

5

of similarity after deleting all 'unprotectable elements . . . .'"
(Reply at 2:16-17.)  This is an incorrect statement of the burden.
As the Ninth Circuit has explained,

> [A] defendant may challenge the originality of a plaintiff's
> [work] by showing that it is in fact a copy of a preexisting
> one . . . . [I]n order to establish that the plaintiff copied
> a preexisting work, a *defendant must show . . . that*
> *plaintiff's work is substantially similar to the prior work* in
> both ideas and expression.

N. Coast Indus. v. Jason Maxwell, Inc., 972 F.2d 1031, 1033-34 (9th
Cir. 1992) (emphasis added).  Thus the burden is clearly on
Defendants, both as the summary judgment movants and as the parties
relying on the non-originality defense, to show that Plaintiff's
work is non-original by comparing it to preexisting works–e.g., the
manufacturer's descriptions.  If Defendants could show conclusively
that Plaintiff had copied large portions of the allegedly
copyrighted material, and that what remained afterward was trivial,
it could succeed on its summary judgment.  See, e.g., Excelligence
Learning Corp. v. Oriental Trading Co., C 03-4947 JF, 2004 WL
2944048 (N.D. Cal. Dec. 20, 2004) ("The Court concludes that when
the unprotectable elements are filtered out, and only the
protectable elements are considered, no reasonable trier of fact
could find that the catalogs are substantially similar.").

     Plaintiff identifies, in a side-by-side comparison, 971
product descriptions it alleges Defendants copied.  (Complaint Ex.
B, Dkt. No. 1.)  However neither party has done the work, described
by Defendants as "onerous and burdensome," (Reply at 2:15), of
separating out the protectable elements from the allegedly non-

1  protectable ones in all 971 product descriptions.  As discussed
2  above, the burden to do so falls to the Defendants.

3       Defendants have presented some evidence to show that the
4  product description of the M155 Bluetooth Headset contains some
5  non-original elements.  In a deposition, Mitchell Langstein
6  admitted that the product description starting with the words
7  "sleek and lightweight" and ending with "the smart way to connect
8  with your smartphone" as well as the product description under
9  "Product Features" starting with "[t]he easiest way to answer
10 handsfree," and down to "excellent sound quality and amazing
11 lightweight design" appeared to be an exact copy of those found on
12 the manufacturer's website.  (Dec. of M. Cogburn Ex. A at p.112:13-
13 25, 113:1-5.)  Plaintiff does not appear to dispute that these
14 sections are not original.

15      Apart from that portion of the M155 product description,
16 however, Defendants have not demonstrated that the product
17 descriptions–all of which are the subject of registered copyright,
18 and so presumptively protectable–are non-original and therefore
19 non-protectable.  Thus, Defendants have not "identified those
20 portions of the pleadings . . . which it believes demonstrate the
21 absence of a genuine issue of material fact."  <u>Celotex</u>, 477 U.S. at
22 323.

23      Plaintiff also argues that the formatting and arrangement of
24 facts under the headings "Specifications," "Included Parts,"
25 "Accessories/Replacement Parts" and "Product Documentation" are
26 entitled to copyright protection.  Ryan Morrison states that
27 "[t]his arrangement of facts within these sections was not done
28 alphabetically or based on any other party" and that "the

arrangement and selection of facts to include in these sections was based on the standard format that I personally developed for Cellular." (Dec. of R. Morrison ¶ 17.)  Defendants do not appear to dispute Plaintiff's claim that one of its employees independently chose to select and format the facts under those headings.  Thus, to the extent that Plaintiff's employee selected and arranged the facts under the heading, Defendants have not shown Plaintiff did not exercise the minimal degree of creativity that is required for copyright protection.  See Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 348 (1991) ("Factual compilations . . . may possess the requisite originality.  The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data. . . . These choices . . . are sufficiently original.")

    Finally, Plaintiff argues that the FAQ section of its website is entitled to copyright protection.  The FAQ consists of questions about Plaintiff's products and brief answers.  Defendants do not dispute Plaintiff's claim that the FAQ section is original and protectable.

    In short, there are genuine issues of fact as to the originality of the product description texts, the arrangement of the facts under certain headings on the product description pages, and the FAQ section.  Thus, Defendants are not entitled to summary judgment based on a non-originality argument.

**B.  Copying of the constituent elements of the work that are original.**

1    In addition showing that it holds a valid copyright in at

2    least some portions of the work, Plaintiff must also show that

3    Defendants copied from the protectable elements.[1]

4    The Ninth Circuit applies a two part test, an extrinsic test

5    and an intrinsic test, to determine whether there is copying

6    sufficient to constitute infringement.  Apple Computer, Inc. v.

7    Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994).  "At summary

8    judgment, courts apply only the extrinsic test, [which examines

9    similarities between the two works based on external criteria]; the

10   intrinsic test, which examines an ordinary person's subjective

11   impressions of the similarities between two works, is exclusively

12   the province of the jury."  Funky Films, Inc. v. Time Warner Entm't

13   Co., L.P., 462 F.3d 1072, 1077 (9th Cir. 2006).  "A plaintiff

14   avoids summary judgment by satisfying the extrinsic test which

15   makes similarity of the works a triable issue of fact."  Kouf v.

16   Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir.

17   1994).  A triable issue of fact "exists when the plaintiff provides

18   indicia of a sufficient disagreement concerning the substantial

19   similarity of two works to require submission to a jury."  Brown

20   Bag Software v. Symantec Corp., 960 F.2d 1465, 1472 (9th Cir.

21   1992)(internal quotation marks and citation omitted).

22   However, a substantial similarity analysis is not required

23   when defendants "admit that they in fact copied," Norse v. Henry

24   Holt & Co., 991 F.2d 563, 566 (9th Cir. 1993), or when a "defendant

25

26   _____

27        [1]Plaintiff does not need to show that defendant copied
     Plaintiff's work in its entirety.  L.A. Printex Indus., Inc. v.
     Aeropostale, Inc., 676 F.3d 841, 852 (9th Cir. 2012).  It is enough
28   that the defendant appropriated a substantial portion of the
     plaintiff's work.  Id.

1   has engaged in virtual duplication of a plaintiff's entire work,"
2   Narell v. Freeman, 872 F.2d 907, 910 (9th Cir. 1989).  See also
3   Range Rd. Music, Inc. v. E. Coast Foods, Inc., 668 F.3d 1148, 1154
4   (9th Cir. 2012) (holding that substantial similarity is not an
5   element of a copyright infringement claim).

6        Defendants do not dispute Plaintiff's claim that their website
7   is substantially similar to Plaintiff's website.  Instead,
8   Defendants again argue that Plaintiff's website consists of
9   unprotectable elements.  However, originality goes to the *first*
10  prong of the Feist test,[2] already discussed.  The second prong goes
11  to evidence of copying of whatever original material there is.  The
12  issue is whether "the *protectible elements, standing alone*, are
13  substantially similar."  Cavalier v. Random House, Inc., 297 F.3d
14  815, 822 (9th Cir. 2002)(internal quotation marks and citation
15  omitted)(emphasis in original).

16       Defendants also do not appear to dispute the deposition
17  testimony of Defendants' website designer, Aelorae Qahlwyn.
18  Qahlwyn admitted that Defendant Oakes instructed her to copy and
19  paste product descriptions and images from Plaintiff's website.
20  (Dec. of R. McWilliams, Ex. B at 36:5-25, 37:1-2.)  Because, as
21  noted above, Defendants have not shown that the product
22  descriptions do not contain nontrivial amounts of original
23  material, this amounts to an admission of direct copying of
24  presumptively protectable copyrighted material.  Because Plaintiff
25  has provided direct evidence of copying, the Court does not need to
26  engage in a substantial similarity analysis.  Rd. Music, Inc. v. E.

27  _____

28       [2]See initial text of Part III., supra.

10

1  Coast Foods, Inc., 668 F.3d 1148, 1154 (9th Cir. 2012).[3]  There is

2  a genuine issue of fact as to infringement of the product

3  descriptions and their arrangements and Defendants are not entitled

4  to summary judgment.

5      Finally, Defendants' FAQ section appears to be substantially

6  similar to Plaintiff's FAQ section.  Plaintiff argues that

7  Defendants copied Cellular's 2012 FAQ section either verbatim or

8  nearly verbatim.  To support this claim, Plaintiff relies on

9  Qahlwyn's testimony and Langstein's declaration.  First, Qahlwyn

10 testified that she created the FAQ page and inputted information

11 that was provided by Defendant Oakes or Katie Oakes.  (Dec. of R.

12 McWilliams, Ex. B at p. 44:18-25, 45: 1-25.)  Although this

13 information suggests that Defendant Oakes may have taken the

14 information from Plaintiff's website because he was previously

15 employed by Plaintiff, it is unclear where the information was

16 taken from exactly.  Second, in Langstein's declaration, he stated

17 that "the copy and paste job was so extensive that many of the

18 images and hyperlinks in the FAQ contained links, whether active or

19 broken, to the Cellular website."  (Dec. of Langstein ¶ 5.)  This

20 is at least circumstantial evidence of copying.

21

22

23      [3]The Court notes, however, that text under the "Bluetooth
   Headset Benefits" heading found on Plaintiff's M155 product
24 description page is found verbatim on Defendants' website.  (Dec.
   of R. Morrison, ¶ 18 & Exs. B & D.)  Defendants' website also has
25 the same arrangement of facts under certain headings on the M155
   product page as those found on Plaintiff's website.  (Dec. of R.
26 Morrison, Exs. B & D.)  Specifically, the facts under the "Product
   Features" heading and "Included Parts" heading are identical on
27 both websites.  Thus, there is at least some evidence of
   substantial similarity of original content, at least with regard to
28 the M155 product page and description.

1   However, even if there were no evidence of copying, the FAQ

2   section on the two websites appear to be substantially similar to

3   one another.  Defendants' FAQ section contains seven of the nine

4   headings found on Plaintiff's FAQ section and contains a similar

5   number of questions under each heading.  (Dec. of R. Morrison Exs.

6   E & F.)  A side by side comparison illustrates that these headings

7   and questions are similarly ordered.  (Id.)  Moreover, the

8   questions are similarly framed.  (Id.)  For example, under the

9   "Cases" heading, Plaintiff frames a question as "I received a pouch

10  case that is made by a different manufacturer than my phone.  For

11  example, a Blackberry case for my iPhone.  Is this a mistake?"

12  whereas Defendants frame the question as "I received a pouch case

13  by a different manufacturer than my phone.  Is this a shipping

14  error?"  (Id.)  Also, under the "Batteries" heading, Plaintiff

15  frames a question as "How long do batteries last before they need

16  to be replaced?  Can I do anything to prolong their lifespan?"

17  whereas Defendants frame the question as "How long before I will

18  need a replacement battery?  Anything I can do to prolong the

19  lifespan?"  (Id.)  Because a side by side comparison reveals that

20  the wording and number of questions are not different from each

21  other, there is a issue of fact as to the substantial similarity

22  between the two parties' FAQ section.  Cf. Mist-On Sys., Inc. v.

23  Gilley's European Tan Spa, 303 F. Supp. 2d 974, 978 (W.D. Wis.

24  2002)("A side-by-side comparison of the parties' undoctored

25  Frequently Asked Questions pages clearly reveals that the sequence,

26  the wording and the number of the questions are different from each

27  other.")  Thus, Defendants are not entitled to summary judgment

28

12

1  because a reasonable jury could find Defendants' FAQ section to be

2  substantially similar to that of Plaintiff's.

3  **C.   Unclean Hands Defense**

4       "The defense of unclean hands by virtue of copyright misuse

5  prevents the copyright owner from asserting infringement and asking

6  for damages when the infringement occurred by his dereliction of

7  duty."   <u>Supermarket of Homes, Inc. v. San Fernando Valley Bd. of</u>

8  <u>Realtors</u>, 786 F.2d 1400, 1408 (9th Cir. 1986).  "Plaintiff's action

9  will be dismissed under the theory of unclean hands if defendant

10  establishes that plaintiff's evidence was false and that plaintiff

11  was involved in a scheme to defraud the public."  <u>Id</u>.  The unclean

12  hands defense also "forbids the use of the [copyright] to secure an

13  exclusive right or limited monopoly not granted by the [Copyright]

14  Office and which is contrary to public policy to grant."  <u>Altera</u>

15  <u>Corp. v. Clear Logic, Inc.</u>, 424 F.3d 1079, 1090 (9th Cir.

16  2005)(internal quotation marks and citation omitted); <u>see also</u> <u>A &</u>

17  <u>M Records v. Napster, Inc.</u>, 239 F.3d 1004, 1026–27 (9th Cir.2001)

18  (stating that copyright misuse "prevents copyright holders from

19  leveraging their limited monopoly to allow them control of areas

20  outside the monopoly.").

21       Defendants argue that they are entitled to summary judgement

22  on their affirmative defense of unclean hands because Plaintiff has

23  tried to gain a monopoly over marketing materials that it does not

24  own, but are actually created by the manufacturers.  However,

25  Plaintiff disputes this and argues that it has never sought to

26  prevent use of the marketing materials provided by the

27  manufacturer.  Instead, Plaintiff argues that it is only trying to

28  protect its copyrighted works.  (Dec. of Langstein ¶ 10.)

1  Plaintiff relies on Langstein's declaration.  In his declaration,
2  Langstein states that "Cellular does not seek to control areas
3  outside of its copyright. . . ."  (Dec. of Langstein ¶ 9.)  Because
4  Plaintiff has provided evidence that Plaintiff is not trying to
5  control areas outside of the monopoly, and because in any event the
6  exact scope of the copyright, if any, is the key issue in the case,
7  there is an issue of fact as to copyright misuse.  Thus, Defendants
8  are not entitled to summary judgment.

9  **D.   Remedies**

10     Defendants argue that they are entitled to summary judgment
11  because Plaintiff has not established any actual damages suffered
12  as a result of the alleged copying.  (Mot. Summ. J. at 12:2-5.)
13  Defendants also argue that Plaintiff's claim for damages should be
14  stricken because the copyrighted work was neither registered prior
15  to the commencement of the infringement nor within three months
16  after first publication of the work, as required under 17 U.S.C. §
17  412.

18     Plaintiff's complaint specifically requests both actual and
19  statutory damages in its Prayer for Relief.  (Compl., Prayer for
20  Relief ¶¶ 4-7.)  However, Plaintiff does not dispute that it is
21  barred by § 412 from claiming statutory damages, and at oral
22  argument Plaintiff's counsel stated that Plaintiff would no longer
23  seek damages for this claim.

24     The Complaint also requests an injunction against any future
25  use by Defendants of Plaintiff's allegedly copyrighted works, and
26  an order to take down the allegedly infringing website.  (Compl. ¶¶
27  37-39.)  Plaintiff may proceed with its copyright claim for
28  injunctive relief only.

14

**IV.   Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment is DENIED IN PART AND GRANTED IN PART.   The Court grants summary judgment to Defendants as to any claim for damages arising out of the alleged copyright infringement.   However, summary judgment is denied as to a claim for injunctive relief.

Additionally, Plaintiff has filed an ex parte application to be allowed to file a surreply in order to address a question about when Defendants had notice of Mr. Morrison's role in creating website content.   (Dkt. No. 96.)   However, because that issue does not touch on the remedies question, and because Plaintiff survives the Motion as to the substantive issues, the application is DENIED as moot.


IT IS SO ORDERED.


Dated: November 5, 2014

DEAN D. PREGERSON
United States District Judge